UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, | FILED UNDER SEAL |
| v. | 1:11-cv-05406<br>Judge Ronald A. Guzman<br>Magistrate Judge Jeffrey Cole |
| BELAL K. FARUKI and NEURAL MARKETS, LLC, Defendants, | |
| And | |
| EVOLUTION QUANTITATIVE 1X FUND and EVOLUTION QUANTITATIVE 1X, LLC, Relief Defendants. | |

FILED

AUG 1 0 2011

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# COMPLAINT

Plaintiff, the United States Securities and Exchange Commission (SEC), alleges as follows:

## NATURE OF THE ACTION

1. The SEC brings this securities law enforcement action to halt an ongoing fraudulent investment scheme run since at least January 2010 to the present by Belal K. Faruki (Faruki) and Neural Markets, LLC (Neural Markets) (collectively, Defendants), and to protect investor funds from further dissipation. As part of the scheme, Faruki and Neural Markets presented themselves as managers of a start-up quantitative hedge fund that began trading in 2009. Through their elaborate fraud, Defendants defrauded at least one investor (Investor) out of a $1 million and have solicited other investors as well.

2. From January 2010 through at least October 2010, in connection with their fraudulent offer and sale of the Evolution Quantitative 1X Fund (Evolution 1X Fund) securities, Defendants made numerous materially false and misleading statements about the investment (Evolution 1X Fund Offering). Specifically, Faruki and Neural Markets made the following misrepresentations, among others, to the Investor:

a. that Faruki, through Neural Markets, created a quantitative hedge fund called the Evolution 1X Fund that was actively trading and had a successful track record of positive performance since at least December 2009;

b. that other wealthy individuals had invested approximately $5 million with Defendants and those funds were being traded by Defendants, but that the Defendants could not reveal the investors' identities because of confidentiality restrictions;

c. that Defendant Faruki had invested his own money in the Evolution 1X Fund and his interests were aligned with the interests of the other supposed investors;

d. that Defendants engaged RSM McGladry, Inc. (McGladry), a reputable auditor, to perform audit services for Neural Markets and the Evolution 1X Fund and that McGladry would provide quarterly and annual audited financial statements for the Evolution 1X Fund to the Investor; and

e. that Defendants traded securities for the Evolution 1X Fund through prime brokers J.P. Morgan Securities, Inc. (JPMS) and Tradestation Securities, Inc. (Tradestation).

3. Based on these and other false representations, the Investor sent Defendants $1 million in exchange for 10 units of the Evolution 1X Fund plus a 1% interest in Neural Markets. Shortly after obtaining the Investor's money, Faruki, through Neural Markets, transferred the funds to a bank account in the name of Evolution Quantitative 1X, LLC (Evolution LLC). Evolution LLC then transferred the funds into accounts at Tradestation Securities, Inc. (Tradestation) in the name of Evolution LLC.

4. The Investor had no knowledge of Evolution LLC. Defendants never disclosed to the Investor the existence of Evolution LLC or that his money would be transferred to accounts held by or in the name of Evolution LLC.

5. After transferring the Investor's funds to the Evolution LLC Tradestation accounts, Defendants, through at least October 2010, continued to make material misrepresentations and failed to disclose other material facts to the Investor. Defendants falsely represented to the Investor that trading was generating profits for the Evolution 1X Fund, when in fact losses were being incurred.

6. By virtue of their conduct as alleged herein, Defendants Faruki and Neural Markets engaged in transactions, acts, practices, and courses of business that constitute violations of Section 17(a) of the Securities Act of 1933 (Securities Act) [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5]; Section 206(4) of the Investment Advisers Act of 1940 (Advisers Act) [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 promulgated

thereunder [17 C.F.R. § 275.206(4)-8]; and, in the alternative, Defendant Faruki has aided and abetted Neural Markets' primary violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 promulgated thereunder [17 C.F.R. § 275.206(4)-8].

7. The SEC, in the interest of protecting the public from further fraudulent activity and to provide relief to the Investor or investors injured by Defendants' fraudulent scheme, brings this civil enforcement action seeking a judgment: (a) permanently enjoining Defendants from future violations of the antifraud provisions of the federal securities laws; (b) requiring Defendants and Relief Defendants to disgorge their ill-gotten gains, plus prejudgment interest thereon; (c) imposing an appropriate civil penalty against Defendants; and (d) such other relief as the Court deems appropriate.

8. In light of the possible dissipation of remaining investor assets by Defendants Faruki, Neural Markets, and the Relief Defendants Evolution 1X Fund and Evolution LLC, the SEC seeks immediate, emergency relief at the outset of this lawsuit, including the entry of a temporary restraining order against Defendants Faruki and Neural Markets, the imposition of an asset freeze against Defendants Faruki and Neural Markets and Relief Defendants Evolution 1X Fund and Evolution LLC, and other ancillary relief.

**JURISDICTION**

9. The SEC brings this action pursuant to the authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)], seeking to restrain and enjoin permanently the Defendants from engaging in the acts, practices, transactions and courses of business alleged herein, and for such other equitable relief as may be appropriate or necessary for the benefit of investors and the public.

10. The SEC also seeks a final judgment ordering the Defendants and Relief Defendants to disgorge ill-gotten gains and pay prejudgment interest thereon, and ordering the Defendants to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

11. This Court has jurisdiction over this action, and venue lies in this District, pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)], Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14]. The Defendants, directly or indirectly, singly or in concert, have made use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein. Some of these transactions, acts, practices and courses of business occurred in the Northern District of Illinois, where the Defendants reside and made representations during the relevant period. In addition, the SEC's Chicago Regional Office, which has been responsible for investigating and prosecuting this action, is located within this District.

12. The Defendants have, directly and indirectly, made, and are making, use of the mails, and of the means and instrumentalities of interstate commerce, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

13. There is a reasonable likelihood that the Defendants will, unless enjoined, continue to engage in the transactions, acts, practices and courses of business set forth in this Complaint, and transactions, acts, practices and courses of business of similar purport and object.

## DEFENDANTS AND RELIEF DEFENDANTS

### The Defendants

14. **Belal K. Faruki**, age 39, is a resident of Aurora, Illinois and the majority owner of Neural Markets, LLC. Faruki held Series 3, 6, 7 and 63 licenses which lapsed in 2001 and was previously registered with the National Futures Association (NFA). In January 2010, the State of Illinois Securities Department issued a temporary order of prohibition against Faruki prohibiting him from offering or selling securities in Illinois. The Illinois order was based on allegations of fraud in connection with a promissory note offering. The Illinois order was in effect until September 24, 2010, when the parties agreed to an order of dismissal. In 2001, Faruki was subject to a CFTC default order and reparations award for failing to respond to allegations that Faruki fraudulently opened a client account and traded in the account causing client losses.

15. **Neural Markets, LLC** is a limited liability company with its principal place of business in Aurora, Illinois. Faruki owns 67% of Neural Markets, and is the majority owner.

### The Relief Defendants

16. **Evolution Quantitative 1X Fund** purports to be an investment pool managed by Neural Markets.

17. **Evolution Quantitative 1X, LLC** is an Illinois limited liability corporation with its principal place of business in Oswego, Illinois. Evolution LLC was formed on October 1, 2010, and is owned by Ronald L. Weilert and James N. Barry. Weilert and Barry are minority owners of Neural Markets and are business associates of Faruki. Evolution LLC is an unregistered investment pool. Evolution LLC received and is believed to be holding funds belonging to the Investor.

**THE EVOLUTION QUANTITATIVE 1X FUND OFFERING**

18. Since at least January 2010, Faruki has been conducting a sophisticated scheme to induce high-profile investors and hedge fund managers to invest in a purported quantitative hedge fund that, according to Defendants, would engage in algorithmic trading of ETFs. The Investor, a bond portfolio manager at a New York hedge fund, was one of the individuals that Faruki specifically targeted.

19. Between January 2010 and September 28, 2010, Faruki repeatedly pitched his Evolution 1X Fund to the Investor and at least two other potential investors. Faruki's solicitation efforts included telephone conversations, email, Bloomberg instant messages, and two trips to New York City to meet with the Investor in person.

20. Prior to investing with Defendants, the Investor asked Faruki numerous questions about Faruki's skill as a manager, his trading strategy, the size of the fund, the alignment of his interests with investor interests, and his hedge fund's risk management.

21. Faruki and Neural Markets lied throughout their solicitations to the Investor. Throughout the solicitation process, Defendants made numerous false and misleading representations, including the following:

*Performance Track Record*

22. When Faruki began soliciting the Investor in January 2010, he represented that Evolution 1X Fund was trading actual investor funds and had positive performance returns, citing a monthly return of 12% in December 2009 and 32% in January 2010.

23. Between approximately January 2010 and September 28, 2010, Faruki and Neural Markets provided written marketing materials confirming the existence and track records of the Evolution 1X Fund. According to a marketing brochure provided by Defendants to the Investor

in or about August 2010, the Evolution 1X Fund launched in March 2009 and had returned 230% since inception. During this same period, Faruki explained to the Investor that references to simulated returns in Defendants' written materials were to protect the confidentiality of his existing wealthy investors and that real money was being traded to mirror the described simulated strategies.

24. The performance track record touted by Faruki and Neural Markets for the Evolution 1X Fund in the Evolution 1X Offering was false.

25. During their solicitation of the Investor between January 2010 and September 2010, Defendants represented to the Investor that trades on behalf of the Evolution 1X Fund were made through two prime brokers, Tradestation and JPMS. In August 2010, Defendants sent the Investor a written marketing brochure for the Evolution 1X Fund identifying Tradestation and JPMS as the fund's prime brokers.

26. However, before September 2010, Defendants had no trading accounts with actual funds at either broker. JPMS never had any prime brokerage or other business relationship with Faruki, Neural Markets or Evolution 1X Fund. Although three Tradestation brokerage accounts were opened in the names of Faruki and Evolution LLC between September 2010 and October 2010, no such accounts existed at Tradestation before September 2010. Moreover, Tradestation had no accounts on its books for Neural Markets or the Evolution 1X Fund.

27. There were never any accounts at JPMS or Tradestation for Evolution 1X Fund or Neural Markets.

28. The only trading in the Evolution LLC account occurred after the Investor's funds were transferred to Evolution LLC by Faruki and Neural Markets in October 2010 and resulted in trading losses.

*Existence of Other Investors*

29. During multiple telephone conversations and two visits to New York City, which visits took place on or about September 6 and September 16, Faruki told the Investor that he "had $5 million under management from several wealthy investors." Faruki boasted that he was "making his investors rich." Those statements were untrue.

30. As described above, no accounts existed at either of the prime brokers identified by Faruki or Neural Markets in the name of the Faruki, Neural Markets, Evolution 1X Fund or Evolution LLC before the Evolution 1X Offering and the investment by the Investor. Thus, there were no other investors in the Evolution 1X Fund before the Investor.

31. Faruki and Neural Markets represented to the Investor that the names of the wealthy investors had to remain confidential because they would not allow their identities to be revealed. Faruki also falsely told the Investor on September 28, 2010, while conversing through Bloomberg instant messaging that real investor funds were trading. These representations were false because, as explained above, there were no other investors in the Evolution 1X Fund.

*Faruki's Own Money is at Risk Too ("Skin in the Game")*

32. In Faruki and Neural Markets represented that Faruki had a substantial investment in the Evolution 1X Fund which aligned the interest of Neural Markets with other Evolution 1X Fund investors. Faruki told the Investor that he had "used his own dough first" and had a large amount of money in Evolution 1X Fund. This too was false.

*Engagement of a Reputable Auditor*

33. The Evolution 1X Offering PPM provided to the Investor by Defendants in or about September 2010 represents that RSM McGladry, Inc. (McGladry), a well known accounting firm, is the auditor of the fund and will provide quarterly and annual audited

statements for the fund. Faruki further claimed to the Investor that he had engaged the fund auditor. These representations were not true. McGladry was never engaged by Faruki, Neural Markets or the Evolution 1X Fund for any purpose.

34. Based on the misrepresentations described above and the failure of the Defendants to disclose the true facts, the Investor invested $1 million with the Defendants in exchange for 10 units in the Evolution 1X Fund and a 1% equity interest in Neural Markets. The Investor wired $1 million to a Neural Markets account at J.P. Morgan Chase Bank, N.A. on September 28, 2010.

**Faruki and Neural Markets Lulled the Investor Before Confessing Losses**

35. After the Investor invested in the Evolution 1X Fund and Neural Markets on September 28, 2010, Faruki, directly and through Neural Markets, continued to misrepresent the returns generated by the Evolution 1X Fund.

36. In October 2010, Faruki represented that the Investor's investment had been placed in the Evolution 1X Fund, that the Evolution 1X Fund was trading, and was generating at least some positive returns. The Investor requested backup documentation and confirmations for the purported trading but Faruki did not provide them.

37. In reality, the Investor's funds had been transferred to Evolution LLC without the Investor's knowledge. The trading done in the Evolution LLC account caused trading losses.

38. It was not until approximately November 2, 2010, that Faruki informed the Investor of significant trading losses and again lied, claiming the losses were lower than they actually were. Faruki also blamed the losses on an error by Tradestation. Faruki even claimed that he and Neural Markets had filed a complaint with the NFA regarding the dispute against

Tradestation. This was false. The NFA has confirmed that no such complaint was ever filed with them.

## CURRENT RISK OF DISSIPATION OF ASSETS AND THREATS

39. The Investor has unsuccessfully attempted to redeem his investment and recover the remaining balance of his funds from Faruki and Neural Markets. Faruki and Neural Markets warned the Investor that if he seeks help from regulators or begins any inquiries they will use the Investor's funds to pay to defend themselves.

## COUNT I

### Violations of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

40. Paragraphs 1 through 39 are realleged and incorporated herein by reference.

41. As is set forth more fully herein, Faruki and Neural Markets, in the offer or sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce, or by use of the mails, directly or indirectly, employed devices, schemes or artifices to defraud.

42. Faruki and Neural Markets knowingly or recklessly engaged in the fraudulent conduct described above.

43. By reason of the foregoing, Faruki and Neural Markets violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

**Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]**

44. Paragraphs 1 through 39 are realleged and incorporated herein by reference.

45. Faruki and Neural Markets, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce, or by use of the mails, directly or indirectly, have obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon purchaser of securities.

46. By reason of the foregoing, Faruki and Neural Markets violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] And Rule 10b-5 Thereunder [17 C.F.R. § 240.10b-5]**

47. Paragraphs 1 through 39 are realleged and incorporated by reference.

48. Faruki and Neural Markets, in connection with the purchase or sale of securities, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails: (a) used or employed a device, scheme, or artifice to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) and engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon the purchasers and prospective sellers of such securities.

49. Faruki and Neural Markets acted knowingly or recklessly when they engaged in the fraudulent conduct described above.

50. By reason of the foregoing, Faruki and Neural Markets violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

**COUNT IV**

**Neural Markets' Violation of Sections 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)]And Rule 206(4)-8 Thereunder [17 C.F.R. § 275.206(4)-8]**

51. Paragraphs 1 through 39 are realleged and incorporated by reference.

52. Neural Markets, directly or indirectly, by use of the mails or any means or instrumentality of interstate commerce, while acting as an investment adviser within the meaning of Section 202(11) of the Advisers Act [15 U.S.C. § 80b-2(11)] to a pooled investment vehicle has (a) made an untrue statement of a material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances in which they were made, not misleading, to an investor or prospective investor in the pooled investment vehicle; or (b) otherwise engaged in an act, practice, or course of business which is fraudulent, deceptive or manipulative with respect to any investor or prospective investor in the pooled investment vehicle. As a result, Neural Markets violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## COUNT V

**Faruki's Violation of Sections 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] And Rule 206(4)-8 Thereunder [17 C.F.R. § 275.206(4)-8]**

53. Paragraphs 1 through 39 are realleged and incorporated by reference.

54. Faruki, directly or indirectly, by use of the mails or any means or instrumentality of interstate commerce, while acting as an investment adviser within the meaning of Section 202(11) of the Advisers Act [15 U.S.C. § 80b-2(11)] to a pooled investment vehicle has (a) made an untrue statement of a material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances in which they were made, not misleading, to an investor or prospective investor in the pooled investment vehicle; or (b) otherwise engaged in an act, practice, or course of business which is fraudulent, deceptive or manipulative with respect to any investor or prospective investor in the pooled investment vehicle. As a result, Faruki violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## COUNT VI

**Alleged in the Alternative to Count V**

**Aiding and Abetting Violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] And Rule 206(4)-8 Thereunder [17 C.F.R. § 275.206(4)-8]**

55. Paragraphs 1 through 39 are realleged and incorporated by reference.

56. As alleged in Count IV above Neural Markets committed primary violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

57. By reason of the foregoing and pursuant to Section 209(d) of the Advisers Act [15 U.S.C. 80b-9(d)], Faruki aided and abetted, and is therefore liable for, the primary violations

committed by Neural Markets of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8], because Faruki knowingly or recklessly provided substantial assistance to Neural Markets' violations of these provisions.

## RELIEF REQUESTED

WHEREFORE, the SEC requests that this Court enter a judgment:

A. Finding that Defendants Faruki and Neural Markets committed the violations alleged against them herein;

B. Permanently enjoining and restraining Defendants Faruki and Neural Markets from further violations of: (i) Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)]; (ii) Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5]; and (iii) Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8], or, in the alternative with respect to Defendant Faruki, permanently enjoining and restraining Defendant Faruki from aiding and abetting violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

C. Ordering Defendants Faruki and Neural Markets and Relief Defendants Evolution 1X Fund and Evolution LLC to pay as disgorgement all ill-gotten gains obtained through the fraudulent Evolution 1X Offering, plus prejudgment interest thereon;

D. Ordering Defendants Faruki and Neural Markets to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

E. Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered and to entertain any suitable application or motion for additional relief within the jurisdiction of the Court; and

F. Granting such other and additional relief as this Court deems appropriate.

Respectfully Submitted,

Amy S. Cotter (Illinois Bar No. 6238157)
Daniel J. Hayes (Illinois Bar No. 6243089)
Attorneys for Plaintiff
**U.S. Securities and Exchange Commission**
175 West Jackson Boulevard, Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398
Email: cottera@sec.gov
hayesd@sec.gov

Dated: August 10, 2011